## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

In Re:                                     )
                                           )
**DOUGLAS & SAUNDRA EDWARDS,**  )          **Case No. 09-31469**
                                           )
         **Debtors.**              )
_____ )

### ORDER DENYING OBJECTION TO CLAIM

On July 26, 2013, the Court heard opening statements and took evidence on the objection

and amended objection (collectively, the "Objection") of the Debtors Douglas and Saundra

Edwards (collectively, the "Edwards" or the "Debtors") to Claim No. 9 of Title Industry

Assurance Company ("TIAC") and the response ("Response") of TIAC thereto. At the

conclusion of the evidence, the Court heard closing arguments, and took the matter under

advisement. After carefully reviewing the argument and evidence, the Court denies the Edwards'

Objection, for the reasons set forth below.

### *Jurisdiction*

This is a contested matter (Fed.R.Bankr.Proc. 9014) over which the Court has jurisdiction

pursuant to 28 U.S.C. § 1334(b); 11 U.S.C. § 502. This is a core proceeding and the Court has

authority to hear and determine the matter and enter a final judgment. 28 U.S.C. § 157(b)(2)(B).

### *Factual and Procedural Background*

The following background was not discussed in detail at the hearing, but is based on the

information in the record and in the published and unpublished opinions of the state and federal

courts, and is set forth to give background and context to the Objection and Response and the

Court's ruling, particularly in light of the highly convoluted nature of the state and bankruptcy

court proceedings giving rise to the current dispute. The following background does not constitute findings of fact, unless otherwise noted or excerpted from the record.

### State Court Proceedings

The Edwards allege that, sometime in 2001, they innocently set about to build a small pond for their grandchildren. [Dk. 210]. Their downstream neighbor, R.G. Edmonson, Trustee of the Jewell Edmonson Testamentary Trust ("Edmonson"), sued them after the dam the Edwards constructed blocked a stream providing water to Edmonson's property. *R.G. Edmonson, Trustee of the Jewell Edmonson Testamentary Trust v. Edwards*, Case No. 39V010100452, Circuit Court of Barry County, Missouri (the "State Court Litigation").

On June 27, 2002, a Barry County, Missouri Circuit Court (the "State Court") entered judgment against the Edwards and in favor of Edmonson, enjoining the Edwards from maintaining the pond on their property, and awarding Edmonson nominal damages. The State Court also ordered the Edwards to pay a penalty of $50 per day to the extent they failed to "demolish, destroy or remove" the pond and restore the stream within 30 days.

The Edwards appealed the State Court judgment to the Missouri Court of Appeals, who affirmed. *Edmonson v. Edwards*, 111 S.W.3d 906 (Mo. App. S.D. 2003). The Missouri Court of Appeals held that Edmonson, as the lower riparian owner, was entitled to injunctive relief, and that such relief did not preclude an award of money damages, even though nominal. *Id*. at 910.

In 2004, the parties returned to state court, with Edmonson alleging the Edwards had failed to demolish the pond and the Edwards in turn seeking to dissolve the injunction. On March 16, 2004, the State Court ruled against the Edwards a second time, finding them in contempt of the State Court's previous judgment. The State Court entered another judgment against the Edwards in the amount of $26,850 in penalties ($50 per day from July 17, 2002 through March

16, 2004), plus attorney fees of $1,800. The judgment of $26,850 was at some point apparently satisfied; the record is unclear about the nature and extent of Edmonson's subsequent execution attempts on this judgment, and what amounts the Edwards paid to Edmonson and when.

It is also unclear what else happened with the State Court Litigation in the intervening years during and after the Edwards' appeal. But on June 21, 2007, when the Edwards again asked the State Court to dissolve the injunction, the State Court again found the Edwards in contempt. The State Court entered a third judgment against the Edwards for penalties of a total of $59,500 ($50 per day from March 17, 2004, the day after the last judgment, through June 20, 2007 the day before the hearing).   The State Court did, however, offer the Edwards an opportunity to purge themselves of contempt if they demolished the pond by July 20, 2007.

At a subsequent hearing on the Edwards' motion for new trial, the State Court on October 2, 2007 found that the Edwards had "substantially complied" with the June 21, 2007 judgment, by starting to drain – although not completely demolishing – the pond by the July 20, 2007 deadline. The State Court then entered a fourth judgment  setting aside the $59,500 in previously ordered penalties, but nonetheless awarding Edmonson $13,569.33 in attorney fees and costs. Both the Edwards and Edmonson appealed.

The Missouri Court of Appeals, on April 3, 2009, reversed in part. *Edmonson v. Edwards*, 280 S.W.3d 752 (Mo. App. S.D. 2009).   The Missouri Court of Appeals held that the State Court should not have set aside the $59,500 in penalties, and instead remanded for the State Court to determine when and if the Edwards had actually -- and not merely substantially -- complied with the original June 27, 2002 order to destroy the pond and, if so, to recalculate the penalties accordingly. The Court of Appeals also affirmed the State Court's award to Edmonson of his attorney fees and expenses.

3

On remand, the State Court in a fifth (or technically fourth?) judgment dated September 21, 2009 found that the Edwards were in contempt from January 17, 2004 until July 20, 2007 (when they apparently fully demolished the pond) and entered judgment in favor of Edmonson at $50 per day for that period, or a total of $63,950. The State Court denied Edmonson's request for additional attorney fees and expenses incurred in connection with the second appeal and in preparation for the hearing following remand, finding that such request was beyond the scope of the Court of Appeal's mandate. The Edwards apparently did not appeal from the September 21, 2009 judgment, rendering that judgment a final one.

### The Transfer (or Transfers)

TIAC alleges that, in November 2004 (after the Edwards had lost the first state court appeal and the March 16, 2004 judgment of $26,850 had been entered), the Edwards transferred a piece of their Barry County real estate to their daughter (and perhaps husband). [Dk. 228]. According to TIAC, Stewart Abstract performed the abstracting work, conducted a closing, and issued a title policy, underwritten by Stewart Title Guaranty Company ("Stewart Title"). [Dk. 228]. Later, on August 6, 2007, shortly after the July 20, 2007 deadline the State Court had set for fully demolishing the pond, the Edwards transferred another piece of real estate to their daughter (and perhaps husband). [Exhibit No. 12]. Stewart Abstract also handled that closing and Stewart Title also underwrote this policy, according to TIAC. Assuming the date is accurate, this August 2007 transfer would have occurred after the June 21, 2007 judgment and the demolition of the pond but before both the Missouri Court of Appeals' reversal of the vacation of the $59,500 judgment and the State Court's October 2007 reinstatement of the judgment in the new amount of $63,950.

The Edwards assert that their transfers were innocent, and that Stewart (whether Stewart Abstract or Stewart Title – the Edwards do not distinguish) negligently failed to identify the State Court Litigation. The Edwards also assert there was no judgment against them at the time of either of the transfers. TIAC counters that the Edwards committed fraud against Stewart Abstract, the title company, by failing to disclose the State Court Litigation. TIAC also alleges that Edmonson had been attempting to enforce his judgment against the transferred properties, and that the transferee(s)/purchaser(s) made a claim against Stewart Title. TIAC states that, Stewart Title, to protect the interest of these insured(s)/transferee(s), settled its insured(s)' claim by paying $48,500 to Edmonson. Stewart Title in return took a partial assignment of the Edmonson judgment pursuant to a written assignment and subrogation agreement. As will be discussed below, Stewart Title later assigned its interest to TIAC.

### *The Bankruptcy Filing*

The Edwards filed their Chapter 13 bankruptcy petition on December 4, 2009. At the time they filed, they owned in addition to other real estate a home and 83 acres in Barry County, Missouri, which they valued at $300,000 [Schedule A]. On Schedule D, the Edwards listed that the property was encumbered by a first deed of trust in favor of Chase Home Finance in the amount of $164,411. On their Schedule F, Debtors listed among other unsecured creditors a "judgment debt" that arose "September 21, 2009" to Edmonson, in the amount of $63,950. Since they were current on their mortgage, the Edwards' Chapter 13 Plan filed with the petition proposed to pay ongoing mortgage payments to Chase directly,[1] and to pay their other creditors 100% of their claims.

---

[1] Local Rule 3094-1.C (1) so provides.

On December 31, 2009, Edmonson filed an objection to confirmation of the Edwards'
plan [Dk. 16]. Specifically, Edmonson stated that he was the holder of a judgment lien in the
amount of $104,799.41 that was secured by the Edwards' real property, and that his judgment
lien was prior to the Chase deed of trust. Edmonson objected that the plan failed to properly pay
his secured claim under 11 U.S.C. § 1325(a)(5). The Edwards, through their counsel at the time,
responded that they intended to object to Edmonson's claim [Dk 20]. In the meantime, the
Chapter 13 Trustee filed a motion to deny confirmation of the plan; the Edwards responded that
confirmation issues would be resolved once their (intended) objection to the Edmonson claim
was resolved. [Dk. 28].

### *Edmonson Claim Filing And Litigation, Including Appeals*

Edmonson had filed a secured proof of claim [Claim No. 3] on December 30, 2009, in the
amount of $104,799.41. The claim stated that the security for the claim was a "perfected
judgment lien" against the Edwards' real estate. The documentation attached to the claim
included copies of the state court judgments dated March 16, 2004 and September 21, 2009. A
letter from Edmonson's state court attorney calculated the claim as follows:

| | |
|---|---:|
| Penalty Judgment (March 16, 2004) | $ 63,950.00 |
| Interest to July 20, 2007 | $ 10,078.52 |
| Interest from July 20, 2007 ($15.78 per day x 879 days – Dec. 16, 2009) | $ 13,853.04 |
| Costs on Appeal (Transcript, Filing Fee and Certified Mails) | $    659.82 |
| Attorney's fees and costs per Judgment dated 10/2/07 | $ 13,569.33 |
| Interest on attorney's fee Judgment ($3.34 per day x 805 days – December 16, 2009 | $  2,688.70 |

$104,799.41[2]

---

[2] Since the Edwards valued their home and 83 acres as worth $300,000, there was sufficient equity, even
after the $164,411 lien of Chase Home Finance, for the judgment lien to be deemed fully secured.

On February 22, 2010, the Edwards filed an objection to Edmonson's Claim No. 3, on the grounds that Edmonson had transferred and assigned his claim to Stewart Title and that Edmonson's claim was a duplicate of Stewart Title's filed claim [Claim No. 9], and therefore should be disallowed.  [Dk 32]. Edmonson responded that he had executed on other real estate not belonging to the Edwards (presumably the property transferred to the Edwards' daughter), and had received a settlement from Stewart Title in the amount of $48,500, and that he intended to file an amended claim to reflect the credit of $48,500 [Dk. 34].

Edmonson did file an Amended Claim No. 3-2 on March 10, 2010 in the reduced amount of $56,759.18. Attached to the Amended Claim was a letter with an itemization of additional costs from the state court execution for publication and postage of $459.77, minus the $48,500 paid by Stewart Title to Edmonson on February 8, 2010. Edmonson filed a supplementation of this response, including copies of the Assignment, on May 14, 2010. [Dk. 53].

On May 18, 2010, the Hon. Jerry Venters[3] entered an Order denying the Edwards' Objection to Claim No. 3 on the grounds Edmonson had filed an amended claim [Dk. 56]. That is because, typically, the filing of an amended claim after an objection moots the original objection. In this case, however, with the apparent consent of the Edwards and Edmonson,[4] the Court later treated the original Edwards' Objection as an Objection to the Edmonson Amended Claim, and set a hearing on the claim objection and the Edmonson objection to confirmation for August 26, 2010.

At the August 26, 2010 hearing, the Court overruled the Edwards' Objection and allowed Edmonson's amended claim as secured in the amount $56,529.90 as of December 4, 2009 [Dk. 75, 77]. Since the Edwards had not filed a written objection to the Edmonson Amended Claim,

---

[3]        Now retired.

[4]        The Edwards did not file a written objection to the Edmonson Amended Claim.

the record before this Court does not reflect what the Edwards argued at the hearing in support of
their contention that Edmonson was not entitled to a claim. As expressed in the opinion of the
Eighth Circuit Bankruptcy Appellate Panel (the "B.A.P."), discussed below, the Edwards offered
no testimony to controvert the calculations of Edmonson's state court attorney and expressly
declined to testify at the August 26th hearing. The Bankruptcy Court did recalculate interest to
reflect accrual of the bankruptcy court's "local rule rate" instead of the judgment rate from and
after the petition date, which accounts for the difference between Edmonson's filed claim
amount of $56,759.18 and the slightly lower amount the Bankruptcy Court allowed of
$56,529.90. The Bankruptcy Court also sustained Edmonson's objection to confirmation, and
directed the Edwards to file an amended plan within 21 days. [Dk. 76, 78].

On September 7, 2010, the Edwards filed a notice of appeal from the Bankruptcy Court's
Order allowing Edmonson's secured claim in the amount of $56,529.90. [Dk. 81]. The
Bankruptcy Court subsequently allowed the Edwards' counsel to withdraw. In the meantime, the
Edwards filed a motion with the Bankruptcy Court to stay proceedings pending appeal, alleging
generally malpractice, conspiracy, misrepresentation and other wrongdoing by various parties,
including their own and other attorneys, in both the underlying State Court Litigation and the
bankruptcy case.  [Dk. 123]. The Bankruptcy Court viewed the Edwards' motion for stay as an
attempt to relitigate the State Court Litigation, and denied the motion. [Dk. 124]. The Edwards
then filed a motion for clarification, alleging many of the same arguments [Dk. 126], which the
Bankruptcy Court again denied. [Dk. 127]. The Edwards filed a motion to reconsider the denial
of the motion for clarification [Dk. 135], which the Bankruptcy Court also denied [Dk. 136]. The
Edwards did not appeal from those orders.

On April 12, 2011, the Eighth Circuit B.A.P. affirmed the Bankruptcy Court's order allowing the Edmonson claim. *Edwards v. R.G. Edmonson, Trustee of the Jewell Edmondson Testamentary Trust (In re Edwards),* Case No. 10-6065 (B.A.P. 8th Cir. April 12, 2011). The B.A.P. noted that the Edwards had not raised their theories of conspiracy, fraud and malpractice at the trial before the Bankruptcy Court, nor had they raised many of the arguments regarding the calculation of interest, attorney's fees, and costs. With respect to the one issue the B.A.P. said the Edwards had raised before the bankruptcy court – whether Edmonson was entitled to accrue post judgment interest – the B.A.P. affirmed the Bankruptcy Court's ruling that post judgment interest continued to accrue on Edmonson's secured claim.

The Edwards appealed the B.A.P.'s order to the Eighth Circuit Court of Appeals; the Eighth Circuit in an unpublished per curiam opinion also affirmed. *In re Edwards*, Case No. 11-2147 (8th Cir. May 7, 2011). As to the Edwards' new arguments about the calculation of the claim amount, the Eighth Circuit declined to consider them "in view of Debtors' decision not to testify or present any evidence in the bankruptcy court." [Dk. 158].

### *The Stewart Title Claim*

In the meantime, as noted above, Stewart Title had filed a secured claim in the amount of $48,500 [Claim No. 9] on February 15, 2010, the amount it had paid Edmonson to settle its insureds' claims arising from Edmonson's attempts to execute against the transferred properties. The documentation attached to Claim No. 9 included a summary reference to an "Assignment of Judgment, Release and Subordination Agreement dated February 10, 2010…" between Edmonson and Stewart Title.

More than a year later,  on November 7, 2011, and while the Edwards' appeal from the Edmonson claim allowance was pending, Stewart Title filed a "Transfer of Claim Other Than

For Security" [Dk. 153], transferring its claim to TIAC. A copy of the Assignment, introduced as Exhibit 9, is actually dated October 29, 2010 as verified by a notarized signature of that date. The undated certificate of service signed by TIAC's counsel shows service on the Edwards. The Court also served a Notice and Order of Transfer of Claim to the Edwards on November 9, 2011; that Notice stated that "objections must be filed with the court within twenty-one (21) days of the mailing of this notice [or] the transferee will be substituted as the original claims without further order of the court." [Dk. 154]. The Edwards did not object to the Notice.

The Bankruptcy Court had entered an Order [Dk. 147] that stayed the Edwards' time for filing an amended confirmable plan pending the appeal. The Bankruptcy Court noted that the Edwards appeared to be current on their plan payments, and were proposing a 100% payment plan. The Bankruptcy Court therefore granted the Edwards an extension of time, or until 35 days after the appeal was final, to file an amended plan.

On July 25, 2012, several months after the 8th Circuit's Final Order (and no amended plan having been filed), Edmondson filed a motion for relief from stay, seeking to foreclose his judgment lien against the Edwards' real estate. Edmonson alleged that he was the holder of an allowed secured claim in the amount of $56,529.90 plus interest, but had no received no payments from the Edwards on account of his secured claim since the filing of the bankruptcy petition. Edmonson also alleged that he believed the Edwards had been making payments to the Trustee in amounts insufficient to pay his secured claim. The Bankruptcy Court thereafter and *sua sponte* set a deadline of September 4, 2012 for the Edwards to file an amended plan.

The Edwards objected to Edmonson's stay relief motion on August 10, 2012 [Dk. 169]. They alleged that the amount of Edmonson's claim was still "highly questionable," arguing about the amount of the attorney fees, the interest, and other issues, and in essence asking the

Bankruptcy Court as an equitable matter to disallow Edmonson's claim. The Edwards also filed

a motion seeking a continuing stay of proceeding while they petitioned for review from the

Supreme Court. The Bankruptcy Court held a hearing on August 23, 2012, and granted

Edmonson's motion for relief, directing the Chapter 13 Trustee to disburse to Edmonson the sum

of $56,529.90 plus interest. [Dk. 171, 175]. The Bankruptcy Court also granted the Edwards'

motion for extension to file a plan, continuing the time until 20 days after the Supreme Court

ruled. [Dk. 173].

Although not reflected in the record, the Supreme Court apparently denied the Edwards'

petition for review, since on March 6, 2013, the Edwards filed an amended plan. [Dk. 191]. The

amended plan, albeit in nonstandard form, appeared to propose to continue to pay the plan

payment of $3,549.09 plus the sale proceeds from the sale of certain real estate, until all creditor

claims were paid in full. With respect to TIAC's secured claim, the Edwards' plan states:

> The only other secured claim is [TIAC] and that amount should be paid or not following
> our objection motion to that claim decision by the Court. Motion of objection will be
> submitted to the Court on March 4, 2013. We have tried to contact their lawyer and the
> company within the last month, but to this point they have not returned our calls.
> Explanation for our objections, and why this had not been submitted previously will be
> included in our motion of objection.

[Dk. 191]. The Trustee filed a motion to deny confirmation of the plan, which is still

pending. [Dk. 192].

On March 18, 2013, the Edwards filed the initial paper commencing the claims objection

matter that was ultimately heard by this Court on July 27, 2013.  The paper, captioned, "Motion

to Reconsider Whether Title Assurance Company Has a Secured Claim And/Or a Valid Claim,"

was treated by the Court as an objection to TIAC Claim No. 9. The Objection generally

challenged the form and nature of Stewart Title's Assignment to TIAC as well as the underlying

merits of the claim (the specifics of the Objection will be discussed in more detail below). [Dk. 195].

The Claim Objection was set for hearing on the regular docket on May 23, 2013, with a response time of May 9, 2013. TIAC did not respond, but the Court called the matter, and the Edwards appeared. The Court noted that the Edwards had not served TIAC, and set a new objection deadline and hearing date, and directed the Edwards to serve TIAC.  [Dk. 207].

The Edwards filed a "Motion Objecting to Title Assurance Company's Claim Number Nine" on June 6, 2013, which the Court treated as an amended objection.  [Dk. 201]. The Edwards served the Amended Objection and notice on Stewart Title (not on TIAC) as reflected in certificates of service filed on June 19, 2013. [Dk. 220, 221, 222].

On July 5, 2013, TIAC filed a timely response to the Edwards Objection to claim. An evidentiary hearing ensued, after which this Court took the matter under advisement.

### *Discussion*

#### *Law Regarding Allowance of Claims*

The allowance of proofs of claims is governed by 11 U.S.C. § 502(a), which generally provides that a proof of claim if filed is allowed, unless a party in interest objects. In Chapter 13, the debtor is considered a "party in interest" with standing to object. Section 502(b) provides that if an objection is made, the Court shall determine the amount of the claim, and ***shall allow*** the claim, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any applicable agreement or applicable law…" (emphasis added). Fed.R.Bankr.Proc. 3002 implementing § 502 in addition provides that a proof of claim executed and filed in accordance with the rules shall constitute ***prima facie evidence of the validity and amount of the clam*** (emphasis added). The burden of proof on a party objecting to a claim is not

altered by bankruptcy law. Rather, the substantive law that creates the claim dictates the burden of proof. *Raleigh v. Illinois Dept. of Rev.*, 120 S.Ct. 1951 (2000).

### The Parties' Arguments

In their original and amended Objection, the Edwards raise several arguments, both as to the procedural nature of the Stewart Title assignment to TIAC, as well as to the substance of the TIAC claim. As to procedure, the Edwards assert that TIAC (1) filed the notice of transfer or assignment untimely and (2) did not attach proper documentation to the assignment in accordance with Bankruptcy Rules. With respect to substance, the Edwards assert that (1) Stewart Title's original claim should be denied due to Stewart Title's alleged incompetence; (2) they personally are not obligated to TIAC; and (3) general equitable grounds should preclude this Court from allowing TIAC's claim.

Finally, the Edwards argue that even if this Court should deny their Objection, TIAC should not be entitled to interest on its claim because of an alleged admission by TIAC's counsel that TIAC holds only an unsecured claim. TIAC, in response, argues, and made a standing objection at trial, that the Edwards' objection should be denied as untimely and is barred on the grounds of claim or issue preclusion. TIAC also argued, in response to the Edwards' equitable arguments, that they committed fraud.

Addressing the arguments in turn:

### TIAC's Argument that the Edwards' Objection is Untimely

At the threshold, the Court must address TIAC's argument that the Edwards filed their objection and amended objection to TIAC's claim on an untimely basis. The Court disagrees with TIAC.

The Bankruptcy Code does not set a deadline for objections to claims. Rather, it contemplates that objections ordinarily may be made at any time, in the absence of other considerations (such as whether a confirmed plan or court order sets a deadline for filing objections). *See* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause [and] may be allowed or disallowed according to the equities of the case"); *see also* Fed.R.Bankr.Proc. 3007, 3008.

In this case, Stewart Title's proof of claim was filed on February 15, 2010, and the assignment of the claim to TIAC was filed with the Court on November 7, 2011. The undated certificate of service filed by TIAC's counsel shows service of the Notice of Transfer on the Edwards, but neither the Transfer nor the Court's Notice sets any deadlines for the Edwards to object to the underlying claim.  Rather, assignment pursuant to Fed.R.Bankr.Proc. 3001(e)(2) grants the "alleged transferor" – Stewart Title -- 21 days to object; otherwise, "the transferee will be substituted as the original claimant without further order of the court." [Dk. 154].

More importantly, at the time TIAC filed its Notice of Transfer,   the Edwards' Objection to the Edmonson claim was still on appeal, and the Bankruptcy Court had stayed the Edwards' deadline to file a plan pending completion of that appeal. The appeal was not finished until sometime in the Spring of 2013, when apparently the Edwards' petition for certiorari to the United States Supreme Court was denied. The Edwards promptly filed their Objection to the TIAC claim on March 18, 2013; the matter was not heard until July 2013 because of the Edwards' difficulties in achieving proper service on TIAC.

The Edwards' plan, as amended on March 6, 2013 and June 19, 2013, has not been confirmed, but the plan gave notice to TIAC of the Edwards' intent to object to the TIAC claim.

TIAC can point to no prejudice from the alleged untimeliness of the Edwards' objection. Under the circumstances, the Court holds that the Edwards' Claim Objection is not untimely.

### *The Edwards' Objection that TIAC's Assignment is Untimely and Defective*

The Edwards in turn argue that TIAC's filing of its Assignment is untimely and defective, for various reasons. The Court disagrees with the Edwards.

The bar date for filing claims in this case was set for April 13, 2010. [Dk. 10]. At the time the Edwards filed bankruptcy, Edmonson held the entire claim resulting from the State Court Litigation in the later filed amount of $104,799.41. Edmonson timely filed a secured claim in that amount before the bar date expired, on December 30, 2009. Edmonson then assigned a $48,500 "slice" of that claim to Stewart Title; Stewart Title in turn timely filed a claim for its slice on February 15, 2010 – again, before the bar date expired.

Once Stewart Title's claim was timely filed, any subsequent owner of that claim merely stepped into Stewart Title's shoes and owned the claim. Thus, to the extent the Edwards are arguing that Stewart Title's claim as assigned to TIAC was filed untimely, their argument is overruled.

Nonetheless, the Edwards also appear to be arguing that somehow an assignment or transfer of a proof of claim must be accomplished before the bar date. That is not, however, the case. The deadline for filing proofs of claim does not set a deadline for parties to assign or transfer their claims. Fed.R.Bankr.Proc. 3001(e), governing transfers, specifically contemplates that claims may be transferred **before or after** a proof of claim is filed, and sets out specific procedures in each circumstances. *See* Rule 3001(e)(1) ("Transfer of Claim Other Than For Security **Before** Proof Filed"). *Compare* Rule 3001(e)(2) ("Transfer of Claim Other Than for Security **After** Proof Filed") (emphasis added).

The Edwards' final argument as to timeliness derives from the apparent delay between the execution of the assignment in October 2010 and the filing of the assignment almost a year later, in November 2011. TIAC did not proffer any reason for the delay. Nonetheless, there is no deadline for filing a notice of transfer once it has been executed. And, even if there were some general equitable principle that might apply – and the Edwards cite to none – the Edwards have not been prejudiced. TIAC's alleged untimely actions did not impact the Edwards' ability to prosecute their appeal or file their plan or object to TIAC's claim. The Court therefore rejects any argument by the Edwards that TIAC's claim should be disallowed on the grounds of untimeliness.

As for the form of the claim and the notice of assignment, it is true that TIAC initially filed a "Motion to Transfer Claim" that was stricken by the Court for failure to use the proper form. [Dk 149]. TIAC did refile the Notice using the Official Form B210A and attaching a summary of exhibits, stating that the assignment dated October 29, 2010 was available upon request. Local Rule 3001-1.A mandates that a filer attach only a summary of the documentation when the documentation exceeds 5 pages. TIAC's notice was thus properly filed using the correct form and is not defective.

The Edwards' other argument with respect to the form of the transfer or documentation of the claim relate to the fact that the Chapter 13 Trustee on his website apparently treated the TIAC claim as No. 18 whereas on the Court's claims registry the claim is No. 9. The Court automatically numbers claims in the order in which they were filed; this may or may not correlate to the Chapter 13 Trustee's recordkeeping of claims, since the Chapter 13 Trustee includes all claims a debtor schedules for the Trustee's purposes, regardless of whether a scheduled creditor actually files a claim with the Court. The Edwards' confusion about the

different purposes served by the Court's record of claims and the Trustee's is simply not grounds to disallow TIAC's claim.

For all these reasons, any procedural challenges the Edwards raise as to the execution, filing and notice of transfer or assignment are denied.

***The Edwards' Substantive Objections***

Turning to the merits:

The Edwards' legal objections are intertwined and overlapping, but, summarized broadly, challenge TIAC's legal and equitable rights to subrogation, on a theory that Stewart Title negligently missed the Edmonson judgment when the Edwards transferred property to their daughter and should thereby not be rewarded or paid for the mistake. The Edwards' objections have no merit and, as discussed below, are barred by various legal doctrines.

Subrogation is generally defined as "the substitution of one person in the place of another with reference to a lawful claim or right." *Universal Title Insurance Company v. United States of America,* 942 F.2d 1311, 1315 (8th Cir. 1991). "[T]here are actually two distinct types of subrogation, 'conventional subrogation' and 'legal subrogation,' which is often confusingly called 'equitable subrogation,' due to its origin and basis in equity." *Id*.

Conventional subrogation occurs when one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid. *Id*., *citing* 73 Am.Jur2d *Subrogation* § at 9 (1974). Legal subrogation "has for its purpose the working out of an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." *Id.*

Legal subrogation does not depend on contract, assignment or privity. *Id.* Although it is a highly favored doctrine, it is not an absolute right. *Id.* Legal subrogation depends on the equities and attending facts and circumstances of each case. *Id.* (cites omitted). In general, the equity of the party seeking subrogation must be clear and substantial, and superior to that of other claimants. *Id.* Subrogation also may not be invoked where it would work an injustice, violate sound public policy, or result in harm to innocent third parties. *Id.*

The Edwards are correct that, under certain circumstances, a title insurer's negligence may preclude it from relying on subrogation. See, e.g., *Universal Title Insurance Company v. United States of America,* 942 F.2d 1311 (title company not entitled to subrogation vis-à-vis interests of the United States, where its failure to discover a federal tax lien was not an excusable mistake of fact). Unfortunately for the Edwards, that is not the case here, for several reasons.

First, the allowance or disallowance of TIAC's claim does not rest on subrogation principles when examining the validity of the claim as between the Edwards and TIAC. Rather, allowance of the claim rests on the simple fact that the Edwards had a judgment against them and that TIAC lawfully and as a matter of contract purchased a portion of that judgment and is entitled by law to enforce the amount of the judgment it purchased.

When the Edwards filed bankruptcy, they acknowledged in their Schedule F that they owed Edmonson $63,950 on account of a "September 21, 2009 judgment." What the Edmonds did not acknowledge, however, was that the judgment – as a matter of Missouri law—became a judgment against their real estate in the same county (Barry County) and was thus secured, rather than unsecured, once it was entered by the State Court. Mo.Rev.Stat 511.350.1. And, once the judgment was entered, it would continue to accrue judgment interest at the statutory rate as provided by Missouri law. Mo.Rev.Stat. 408.040.

18

Thus, it is beyond dispute that when the Edwards filed bankruptcy, they had lost two appeals and owed more than $104,000 to some **one** or **ones** – and that this $104,000 was secured by the equity in their Barry County real estate as a matter of Missouri law. The fact that this amount or claim was later split in essence into two slices  -- a $56,529.90  (plus interest) slice to Edmonson and a $48,500 slice to Stewart Title (now TIAC) – does not change the fact that the Edwards owed **a total** of more than $104,000  arising out of their long and ill-fated legal battle with Edmonson. The Edwards, simply put, ignore this uncontroverted fact.

The rest of their arguments are basically an attempt to relitigate the State Court Litigation and to attack the merits of the Edmonson claim as allowed by the Bankruptcy Court and as affirmed on appeal. Not only does this Court not have jurisdiction to review the State Court judgment under the *Rooker-Feldman* doctrine,[12] but the Edwards have already challenged the Edmonson slice of the claim in the Bankruptcy Court and have lost. The arguments they made challenging the Edmonson slice are essentially the same as their challenge to the TIAC slice. This Court is also thus bound by the law-of-the-case doctrine in of necessity determining that the TIAC slice of the total claim is valid. *Alexander v. Jensen-Carter*, 711 F.3d 905 (8th Cir. 2013) (pursuant to the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case).

The only new issue the Edwards raise in this go round is in essence a waiver or estoppel theory – that TIAC's claim should not be allowed or should only be allowed as an unsecured claim based on some emails (Exhibits 1 and 2) from TIAC's counsel to the Edmonds. The

---

[12]     The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state court judgment from bringing a case seeking review and rejection of that judgment in federal court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

Edwards argue that in these emails TIAC admits it does not have a judgment against the Edwards and that the assignment is "without recourse."

The emails, which the Court allowed into evidence over the hearsay objection of TIAC as admissions of a party-opponent, do not say what the Edwards believe they say. In the emails, counsel for TIAC merely states that its claim is not based on any personal judgment against the Edwards but on the assignment it received from Stewart Title. That, of course, is a true statement – TIAC did not sue the Edwards, but instead in essence "purchased" a slice of the judgment when it paid Stewart Title the $48,500 Stewart Title had paid Edmonson.

The second email merely states that it is TIAC's intention is to "await a ruling from the bankruptcy court as to what, if anything, it will be able to collect on its claim."  The bottom line is that neither of these statements constitutes a waiver of TIAC's rights to enforce its assignment against the Edwards; neither states that TIAC intends to forego its claim or that TIAC believes its claim is unsecured. And, although the Edwards place much stock on the fact the assignment is "without recourse," that phrase is simply a legal term of art. "Without recourse" merely means that, as between TIAC and Stewart Title, TIAC cannot ask for its money back -- not that TIAC has no "recourse" or rights to enforce its claim as against the Edwards.

Next, even if this Court had the ability to somehow re-examine the claim and Stewart Abstract's alleged negligence,[13] the Edwards did not meet their burden at trial of proving Stewart Title and TIAC were not entitled to rely on their contractual rights of subrogation as insurers. TIAC argued that it was entitled to contractual subrogation under the title policy or policies. The

---

[13]      Procedurally, to treat the Edwards' objection as a counterclaim against TIAC seeking denial of state law contractual subrogation under a title policy would very likely implicate *Stern v. Marshall* issues. *Stern v. Marshall*, __ U.S. ___, 132 S.Ct. 56 (2011) (the bankruptcy court may not, consistent with the limitations of Article III of the Constitution, enter a final order in certain kinds of proceedings, even though designated as a core proceeding under 28 U.S.C. § 157. Since this Court is precluded by various doctrines from reaching the merits of the Edwards' argument, the Court does not need to address the issue, and notes that neither party has raised the issue, either.

Edwards for their part put on no evidence that would contradict the terms of the written assignments and subrogation agreements between Edmonson and Stewart Title and Stewart Title and TIAC. Nor did the Edwards challenge whether TIAC actually paid Stewart Title $48,500. The Edwards simply did not put on any evidence which would satisfy their burden of challenging these title insurers' ability to rely on their contractual rights of assignment and subrogation.

More importantly, there is also no basis to deny either Stewart Title or TIAC as title insurers and reinsurers subrogation on any equitable theory. As noted above, the Edwards owed more than $104,000 in a final, nonappealable State Court judgment the day they filed bankruptcy. They had lost their challenges to that judgment in state court. To deny TIAC as the holder of the $48,500 slice of that judgment a right to payment would be to give the Edwards a $48,500 windfall. For all these reasons, the Edwards' substantive objections to the TIAC claim are denied.

### The Edwards' Alleged Fraud on the Title Company

Finally, TIAC has argued that the Edwards committed fraud as against the original title company. TIAC put on no evidence of fraud, and the Court finds credible Mr. Edwards' testimony that he believed there were no enforceable judgments at the time he transferred the properties. That belief may not have been reasonable in light of the circumstances and the history of the litigation; however, the Edwards are not sophisticated people and, the Court believes, genuinely do not grasp the legal implications of what they have done and not done. In any event, whether the Edwards committed any fraud on the original title company is irrelevant; the time for creditors to object to discharge on the grounds of fraud has long since expired.

### Conclusion

The bottom line is this: the Edwards have had numerous opportunities in various Courts to prove they did not owe Edmonson any money. They lost at every turn. TIAC's claim derives from a slice of Edmonson's claim, a claim that has been upheld by final and valid state and federal court orders. That leaves this Court with no alternative; this Court is bound by law and equity to uphold the validity of TIAC's claim.

The Edwards' objection to the TIAC claim is overruled. To the extent the Edwards' objection is deemed an objection to the assignment of Stewart Title's claim to TIAC, that objection is likewise overruled. Claim No. 9 is deemed allowed as secured claim, and in accordance with the ruling of the B.A.P. as affirmed by the Eighth Circuit, continues to bear interest in accordance with 11 U.S.C. § 506(b).

SO ORDERED this 10th day of September 2013.

/s/ Cynthia A. Norton
United States Bankruptcy Judge